IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| v. | : | |
| BINH CAM TRAN | : | NO. 06-536 |

**MEMORANDUM**

**Padova, J.**                                                                                               November 24, 2009

Defendant has filed a Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255, asking that we vacate his conviction and sentence based on ineffective assistance of counsel and breach by the Government of his Guilty Plea Agreement. The Government has filed a Motion to Dismiss the § 2255 Motion on the grounds that Defendant waived his right to collaterally challenge his conviction and sentence. For the following reasons, the Motion to Dismiss is granted.

**I.     BACKGROUND**

On September 27, 2006, Defendant was charged with (1) one count of trafficking in counterfeit goods, in violation of 18 U.S.C. §§ 2320 and 2 (Count I); (2) one count of conspiracy to smuggle goods, in violation of 18 U.S.C. § 371 (Count II); and (3) nine counts of money laundering of amounts greater than $10,000, in violation of 18 U.S.C. § 1957 (Counts III-XI). The charges against Defendant arose from his participation in a scheme in which he fraudulently imported blank watch parts, maintained and operated a clandestine counterfeit Rolex watch-making factory, sold thousands of counterfeit Rolex watches to vendors and customers, and paid amounts exceeding $10,000 into several accounts with money derived from trafficking in counterfeit goods. Defendant was arrested in Vietnam on December 7, 2007. On October 6, 2008, Defendant pled guilty to all counts of the indictment and agreed not to contest forfeiture of $2,273,166 and all counterfeit goods and manufacturing equipment seized by the government.

Defendant's Guilty Plea Agreement contains the following provision:

> In exchange for the undertakings made by the government in entering this plea agreement, the defendant voluntarily and expressly waives all rights to appeal or collaterally attack the defendant's conviction, sentence, or any other matter relating to this prosecution, whether such a right to appeal or collateral attack arises under 18 U.S.C. § 3742, 28 U.S.C. § 1291, 28 U.S.C. § 2255, or any other provision of law. This waiver is not intended to bar the assertion of constitutional claims that the relevant case law holds cannot be waived.

(Plea Agreement ¶ 8.) Notwithstanding the waiver, the Guilty Plea Agreement permits Defendant to file a direct appeal of his sentence if the Government appeals from the sentence; or, if the Government does not appeal, Defendant is permitted to file a direct appeal, but may raise only the following claims: "(1) the defendant's sentence on any count of conviction exceeds the statutory maximum for that count . . . ; (2) the sentencing judge erroneously departed upward pursuant to the Sentencing Guidelines; [or] (3) the sentencing judge . . . imposed an unreasonable sentence above the final Sentencing Guideline range determined by the Court." (Id.)

We held a change of plea hearing, at which Defendant had the assistance of an interpreter, on October 6, 2008. After questioning Defendant regarding his willingness to enter into and understanding of the Guilty Plea Agreement, and finding that he was competent to plead, that his guilty plea was voluntary, and that there was a factual basis for the guilty plea, we accepted his guilty plea. (10/6/08 N.T. at 34.) On March 11, 2009, Defendant was sentenced to a term of 72 months imprisonment followed by 3 years of supervised release, and was ordered to pay a special assessment in the amount of $1,100, and restitution in the amount of $2,273,166.

Defendant appealed his judgment of conviction and sentence to the United States Court of Appeals for the Third Circuit on March 23, 2009. The Government moved to dismiss his appeal based upon the appellate waiver in Defendant's Guilty Plea Agreement. That motion was granted

2

by the Third Circuit, which dismissed the appeal on July 21, 2009.  United States v. Tran, No. 09-1841, Order (3d Cir. July 21, 2009).

On August 4, 2009, Defendant filed his *pro se* Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 and an accompanying Memorandum of Law (the "Memorandum").  He filed a supplemental pleading adding an additional ground for relief on August 18, 2009.  Defendant seeks relief from his judgment of conviction and sentence based on four claims of ineffective assistance of counsel and on the ground that the Government breached his Guilty Plea Agreement.  The Government filed the instant Motion to Dismiss on September 10, 2009, asking that we enforce Defendant's waiver of the right to collaterally attack his conviction and dismiss the § 2255 Motion.  Defendant filed a response to the Motion to Dismiss on September 21, 2009 in which, *inter alia*, he requested an evidentiary hearing.

We held a Hearing on November 18, 2009 to address all outstanding motions.  During the Hearing, we asked Defendant why he had requested an evidentiary hearing and what evidence he intended to submit at such a hearing.  Defendant proffered that his counsel advised him that if he pleaded guilty he would receive a sentence of only 30 months but that he would receive a sentence of 60 months if he did not plead guilty and was convicted at trial; that the presentence investigation report incorrectly calculated his offense level for sentencing purposes; that he would not have pleaded guilty had he known that his total offense level would be greater than 24 or that he would receive a sentence of more than 30 months; that he engaged in counterfeiting on his own and without any associates; and that he was a first-time offender and wished to be considered for the safety valve. Defendant further indicated that he would not call any witnesses at an evidentiary hearing.

## II. LEGAL STANDARD

Title 28, United States Code, Section 2255 provides as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). "In order to prevail on a Section 2255 motion, the movant's claimed errors of law must be constitutional, jurisdictional, 'a fundamental defect which inherently results in a complete miscarriage of justice,' or 'an omission inconsistent with the rudimentary demands of fair procedure.'" United States v. Perkins, Crim. A. No. 03-303, Civ. A. No. 07-3371, 2008 WL 399336, at *1 (E.D. Pa. Feb. 14, 2008) (quoting Hill v. United States, 368 U.S. 424, 428 (1962)).

The United States Court of Appeals for the Third Circuit has held that a waiver of appellate or collateral rights is enforceable provided that (1) it was entered into knowingly and voluntarily; (2) no specific exception set forth in the agreement applies; and (3) enforcement of the waiver would not work a miscarriage of justice. United States v. Goodson, 544 F.3d 529, 536 (3d Cir. 2008) (citing United States v. Jackson, 523 F.3d 234, 243-44 (3d Cir. 2008); see also United States v. Khattak, 273 F.3d 557, 562-63 (3d Cir. 2001); United States v. Shedrick, 493 F.3d 292, 297-98 (3d Cir. 2007). To evaluate whether enforcement of a waiver would result in a miscarriage of justice, the Third Circuit has adopted a number of factors that must be considered, including: "'the clarity of the error, its gravity, its character . . . , the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the

4

result.'" Khattak, 273 F.3d at 563 (quoting United States v. Teeter, 257 F.3d 14, 25-26 (1st Cir. 2001)). While the miscarriage-of-justice determination is open-ended, the Third Circuit has specifically noted that "[e]nforcing a collateral-attack waiver where constitutionally deficient lawyering prevented [a defendant] from understanding his plea . . . would result in a miscarriage of justice." Shedrick, 493 F.3d at 298 (footnote omitted).

**III.    DISCUSSION**

Defendant asserts four claims of ineffective assistance of counsel in his § 2255 Motion and has filed a "Memorandum of Law in Support of Habeas Corpus Petition" (the "Memorandum") that explains his grounds for relief. Defendant's first ground for relief is that he did not knowingly or voluntarily enter into the Plea Agreement due to the ineffective assistance of his counsel, who failed to advise him that the government would need to prove that he committed the charged offenses. Defendant's second ground for relief is that his counsel was ineffective for advising him that he would not receive a sentence above 30 months of imprisonment if he pled guilty, and supported Defendant's appellate waiver to cover up his own ineffectiveness. Defendant's third ground for relief is that he would not have pled guilty and would have insisted on going to trial if he had not been prejudiced by his counsel's performance. Defendant asserts in his fourth ground for relief that his counsel was ineffective for failing to file objections to the pre-sentence investigation report prepared by the probation officer in this matter. Defendant further contends, in his Amended and Supplemental Pleading, that his counsel was ineffective for failing to argue at sentencing that he was eligible for the safety valve pursuant to 18 U.S.C. § 3553(f). In addition, Defendant asserts as a ground for relief that the United States breached his Guilty Plea Agreement by not recommending

5

to the court that he receive a lower sentence.[1]

Defendant filed a Memorandum in Response to the Motion to Dismiss. While his response does not directly address the Motion to Dismiss, it is clear that Defendant challenges the validity of his Guilty Plea Agreement, including the collateral attack waiver, on the ground of his counsel's ineffectiveness. He argues specifically that his counsel was ineffective in failing to advise him that: (1) if he went to trial, the Government would have to prove beyond a reasonable doubt that he had engaged in the charged criminal activity, and (2) he might be sentenced pursuant to the sentencing guidelines. He further argues that, when he accepted the guilty plea, "he did not possess more than a 10th grade education and needed the services of an interpreter; [he] could not have possibly understood anything besides the district court advisory sentencing guideline range of level 24 'minus' three points after he accepted his guilty plea." (Resp. at 6.)

The Government argues that Defendant's guilty plea was valid and that his Guilty Plea Agreement, including the collateral attack waiver, should be enforced. The Government maintains that the voluntariness of the waiver is demonstrated by the plea colloquy and the fact that Defendant reaped substantial benefits from the Guilty Plea Agreement.[2] The Government further contends that enforcement of the waiver in this case would not constitute a miscarriage of justice because Defendant's claims are contradicted by his signed Guilty Plea Agreement and his sworn statements during his plea colloquy, and because an erroneous sentencing prediction by counsel does not

---

[1]Defendant also asserts that his counsel's ineffectiveness is properly asserted in a collateral appeal.

[2]The Government states it that agreed to stipulate to a forfeiture amount of $2,273,166 (pursuant to Count I), even though it could have sought forfeiture of $5,376,370 (pursuant to Count II), for which there was ample evidence. (Mot. to Dismiss at 6.)

constitute a miscarriage of justice where there has been an adequate plea hearing.

      A.      <u>Whether the Plea Agreement Was Knowing and Voluntary</u>

As a threshold issue, the Court must first "consider whether there is record evidence that [Defendant] knowingly and voluntarily signed the waiver." <u>United States v. Gwinnett</u>, 483 F.3d 200, 203 (3d Cir. 2007). The court looks first to the language of the waiver, and then to the plea colloquy. <u>See</u> <u>United States v. Mabry</u>, 536 F.3d 231, 238 (3d Cir. 2008) (citing <u>Gwinnett</u>, 483 F.3d at 203-04).

The language of Defendant's Guilty Plea Agreement clearly provides that he has waived his right to attack his conviction and sentence pursuant to 28 U.S.C. § 2255 and that there are only limited exceptions to this waiver, none of which apply here. (Plea Agreement ¶ 8.) Moreover, Defendant signed both the Guilty Plea Agreement and an Acknowledgment of Rights, acknowledging that he understood the terms of the Guilty Plea Agreement (including the waiver), that he had fully discussed his Guilty Plea Agreement with his counsel, and that he understood his right to maintain his plea of not guilty and go to trial. (<u>Id.</u> ¶ 10; Acknowledgment of Rights ¶¶ 2, 6.)

Prior to accepting Defendant's guilty plea, we conducted a plea colloquy pursuant to Federal Rule of Criminal Procedure 11, which provides as follows:

> (b)(1)  Before the court accepts a plea of guilty or nolo contendere, the defendant may be placed under oath, and the court must address the defendant personally in open court. During this address, the court must inform the defendant of, and determine that the defendant understands . . .
>
>     (N)    the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence.

Fed. R. Crim. P. 11(b)(1); <u>see also</u> <u>Gwinnett</u>, 483 F.3d at 204. During the plea colloquy, we confirmed that Defendant had either read the Guilty Plea Agreement or had it read to him, and had

7

discussed it completely with his attorney. (10/6/08 N.T. at 10.) We also confirmed that Defendant had signed the Guilty Plea Agreement. (Id.) We asked Defendant whether he had been threatened, coerced, or forced into pleading guilty; he answered that he had not. (Id. at 10, 31-32.) We also asked Defendant whether anyone had made any promises to him that were not contained in the Guilty Plea Agreement, to induce his change of plea. (Id. at 10.) He answered that no one had done so. (Id.) We asked Defendant if he wanted to ask or say anything to the Court. (Id. at 33.) Defendant's attorney, after checking with Defendant, answered that he did not. (Id.) We also conducted the following colloquy with Defendant with regard to the waiver:

> THE COURT: Now, ordinarily, the only appeal that you would have from a guilty plea would be if I impose an illegal sentence or if there are any errors in this proceeding or the sentencing proceeding. . . . Do you understand that?
>
> DEFENDANT: Yes.
>
> THE COURT: You have, however, entered into a plea agreement which does contain an appellate waiver provision which is more narrow, generally allowing a defense appeal only where the Government appeals or the Court imposes a sentence in excess of the statutory maximum.
>
> DEFENDANT: Yes.
>
> THE COURT: Or in the event that the Court imposes an upward departure or variance from the advisory guideline range. That also is a limitation to your appellate rights, do you understand that?
>
> DEFENDANT: Yes.
>
> THE COURT: And have you discussed this provision that further limits your appellate rights and I'm talking about the provision that's in the plea agreement. Have you further discussed this provision with your lawyer, do you understand it?
>
> DEFENDANT: Yes.

(Id. at 14-15.) Following our colloquy with Defendant, we found that Defendant was competent to plead; that his plea was voluntary and not the result of force, threats, or promises apart from the Guilty Plea Agreement; and that he understood the charges against him, his legal rights, and the maximum possible penalties he faced. (Id. at 34.)

There is evidence in the record of both the Guilty Plea Agreement and Defendant's change of plea colloquy, that he knowingly and voluntarily signed the waiver. Both the Guilty Plea Agreement and our colloquy with Defendant demonstrate that Defendant was fully informed of his rights, the Government's obligations, and the nature of the collateral waiver. Furthermore, Defendant indicated by both his execution of the Guilty Plea Agreement and his responses to our questions, that he had consulted with his attorney and understood the waiver. Therefore, we find that Defendant knowingly and voluntarily entered into the collateral attack waiver contained in the Guilty Plea Agreement.

      B.      <u>Whether Enforcement of the Waiver Would Constitute a Miscarriage of Justice</u>

Defendant challenges the validity of his guilty plea, including the collateral attack waiver, based on his counsel's ineffectiveness. As we discussed previously, enforcement of a collateral attack waiver where ineffective assistance of counsel prevented a defendant from understanding his guilty plea agreement would result in a miscarriage of justice. <u>Shedrick</u>, 493 F.3d at 298. In order to prove that he received ineffective assistance of counsel in connection with his guilty plea, Defendant must show that his "counsel's performance 'fell below an objective standard of reasonableness,' and that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" <u>Id.</u> at 299 (quoting <u>Strickland v. Washington</u>, 466 U.S. 668, 688, 694 (1984)). However, "an erroneous sentencing prediction . . . is

9

not ineffective assistance of counsel," so long as there has been an adequate plea hearing.  Id. (citations omitted); see also United States v. Jones, 336 F.3d 245, 254 (3d Cir. 2003) (affirming district court's holding that counsel was not ineffective for guaranteeing a low sentence where defendant was advised of potential maximum sentence during plea colloquy); United States v. Mustafa, 238 F.3d 485, 492 (3d Cir. 2001) (noting that any misrepresentations by counsel "were dispelled when [the defendant] was informed in open court that there were no guarantees as to sentence, and that the court could sentence him to the maximum").

We find that our plea colloquy adequately informed Defendant of the maximum sentence he faced.  (10/6/08 N.T. at 28-29.)  Even if Defendant's counsel advised him that he would not be sentenced to more than 30 months imprisonment, we instructed Defendant that he faced a total maximum sentence of 105 years imprisonment under the sentencing guidelines, and that the Court could impose a more severe sentence than recommended by the sentencing guidelines or anyone else.  (Id.)  Moreover, Defendant indicated at the plea colloquy that he had discussed the sentencing guidelines with his attorney and that he understood our remarks.  (Id. at 29.)

Furthermore, while Defendant presently contends that his counsel never informed him that if he elected to plead not guilty, the Government would have the burden at trial of proving his guilt beyond a reasonable doubt, he acknowledged otherwise in writing before changing his plea. Defendant executed an Acknowledgment of Rights on October 6, 2008 that states that he understood that at trial, "the government would have the burden of proving [his] guilt beyond a reasonable doubt and that [he] would not have to prove anything."  (Acknowledgment of Rights ¶ 3(a).)  We also informed Defendant during the plea colloquy that in order to convict Defendant at trial on a not guilty plea, the Government "would have to prove each of [the] essential elements [of the charged

offenses] by competent evidence and beyond a reasonable doubt." (10/6/08 N.T. at 16.) Defendant indicated that he understood. (Id.) We therefore find that there is ample evidence that the plea hearing was adequate.

With respect to Defendant's other argument that enforcement of the waiver would result in a miscarriage of justice due to the ineffective assistance of counsel -- that his attorney supported the plea agreement and waiver merely to cover up his own ineffectiveness -- there is no indication from Defendant's Petition that his counsel's performance fell below an objective standard of reasonableness or that the result of the proceeding would have been different but for Counsel's errors. Since any misrepresentations by Defendant's counsel were eliminated by a fully adequate plea colloquy, Defendant has not proven that he received ineffective assistance of counsel. Based on the Guilty Plea Agreement, the plea colloquy, and Defendant's November 18 proffer, we conclude that enforcement of the waiver would not present a miscarriage of justice.

      C.      Whether the Government Breached the Guilty Plea Agreement

Defendant also argues that his conviction and sentence should be vacated because he reasonably expected to receive a lower sentence than what ultimately was imposed, and he asks that we specifically enforce the Guilty Plea Agreement.[3] (Mem. at 5-6.) The Government asks that we deny this request, as the Guilty Plea Agreement "expressly stated that 'no one has promised or guaranteed to the defendant what sentence the Court will impose.'" (Mot. to Dismiss at 13 n.3 (quoting Guilty Plea Agreement ¶ 6).)

We may not enforce an appellate or collateral attack waiver if the government has breached

---

[3]Defendant does not identify any specific provisions within that which he seeks to have enforced.

11

its own obligations under a plea agreement. United States v. Schwartz, 511 F.3d 403, 405 (3d Cir. 2008) (citing United States v. Moscahlaidis, 868 F.2d 1357, 1360 (3d Cir. 1989)). "Whether the government has breached a plea agreement is a question of law." Id. (citing United States v. Rivera, 357 F.3d 290, 293-94 (3d Cir. 2004)). Although they occur in the criminal context, plea agreements are construed according to general principles of contract law. Id. (quoting McKeever v. Warden SCI-Graterford, 486 F.3d 81, 95-96 (3d Cir. 2007)); see also Moscahlaidis, 868 F.2d at 1361 (listing cases). Due to the Government's tremendous bargaining power, when a plea agreement is ambiguous, it is construed strictly against the Government "when it has drafted the agreement." United States v. Baird, 218 F.3d 221, 229 (3d Cir. 2000) (citing United States v. Padilla, 186 F.3d 136, 140 (2d Cir. 1999)). "'In determining whether the terms of a plea agreement have been violated, [the] court must determine whether the government's conduct is inconsistent with what was reasonably understood by the defendant when entering the plea of guilty.'" United States v. Badaracco, 954 F.2d 928, 939 (3d Cir. 1992) (quoting United States v. Nelson, 837 F.2d 1519, 1521-22 (11th Cir. 1988)). "'However, cases of disappointed but unfounded expectations must be carefully distinguished from those in which the defendant's expectations as to his sentence are predicated upon promises by the Government or statements from the court.'" Id. (quoting United States v. Crusco, 536 F.2d 21, 24 (3d Cir. 1976)).

Although Defendant argues that he expected to receive a lower sentence and was clearly disappointed with the sentence he received, there are no promises or statements in the Guilty Plea Agreement that would have given rise to a reasonable expectation on Defendant's part that his sentence would be 30 months imprisonment. Indeed, the Guilty Plea Agreement specifies that the total maximum sentence Defendant could receive is 105 years imprisonment, three years of

supervised release, a $2.5 million fine, and a $1,100 special assessment. (Guilty Plea Agreement ¶ 5.) The Guilty Plea Agreement further specifies that "[n]o one has promised or guaranteed to the defendant what sentence the Court will impose." (Id. ¶ 6.) Any expectation Defendant may have had that his sentence would be 30 months imprisonment or that the Government had promised him this is, therefore, unreasonable. Consequently, we find that the Government has not breached the terms of the Guilty Plea Agreement.

Since Defendant entered the Guilty Plea Agreement knowingly and voluntarily and enforcement of the waiver would not give rise to a miscarriage of justice, and as the Government has not breached the Guilty Plea Agreement, we therefore find that the collateral attack waiver is enforceable. The Government's Motion to Dismiss is, accordingly, granted.

D.      Defendant's Request for an Evidentiary Hearing

Defendant requested an evidentiary hearing in his Response to the Motion to Dismiss as to the merits of his § 2255 Motion. (Resp. to Mot. to Dismiss at 5-6.) With certain exceptions, the question of whether to order a hearing when considering a motion to vacate sentence pursuant to 28 U.S.C. § 2255 is "committed to the sound discretion of the district court." Gov't of Virgin Islands v. Forte, 865 F.2d 59, 62 (3d Cir. 1989). In exercising that discretion, the district court "must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record." United States v. Booth, 432 F.3d 542, 545 (3d Cir. 2005) (quoting Forte, 865 F.2d at 62). The district court must hold an evidentiary hearing in considering a motion made under 28 U.S.C. § 2255 "'unless the motion and files and records of the case show conclusively that the movant is not entitled to relief.'" Id. at 545-46 (quoting Forte, 865 F.2d at 62).

It is clear that Defendant is not entitled to the relief he seeks. Additionally, many of his

factual allegations are flatly contradicted by the language of the signed Guilty Plea Agreement and his responses to our questions during the plea colloquy. Defendant's proffer to the Court at the November 18 hearing did not bring to light any new evidence, but rather indicated that Defendant's testimony at an evidentiary hearing would consist only of his own statements repeating the arguments made in his Petition and Memorandum. Accordingly, we find that an evidentiary hearing is unnecessary.

**IV. CONCLUSION**

For the foregoing reasons, we grant the Government's Motion to Dismiss Defendant's § 2255 Motion. An appropriate Order follows.

BY THE COURT:

/s/ John R. Padova

John R. Padova, J.